Commonwealth of Pennsylvania, Department of Environmental Resources *v.* Glasgow Quarry, Inc., Appellant.

Argued January 5, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John G. Kaufman,* with him *Bean, DeAngelis & Kaufman,* for appellant.

*Thomas J. Oravetz,* Deputy Attorney General, for appellee.

*Kingsley A. Jarvis,* for Citizens Intervenors.

OPINION BY JUDGE WILKINSON, February 10, 1976:

On May 3, 1973, appellant, operating a quarry, applied for a permit under the provisions of the Surface Mining Conservation and Reclamation Act, Act of November 30, 1971, P.L. 554, *as amended,* 52 P.S. §1396.1 *et seq.* Since November 30, 1972, appellant had been operating the quarry under an interim permit which was due to expire on May 20, 1973. After considerable negotiations, conferences, and exchange of correspondence, on September

19, 1973, the permit requested in the May 3, 1973 application was denied on the grounds that the blasting procedures used and to be used did not adequately safeguard the public.

This was followed on September 27, 1973, with an order from the Department of Environmental Resources to appellant to cease and desist further operations. Appellant promptly appealed both actions to the Environmental Hearing Board. By agreement, a supersedeas order was issued permitting continued operation of the quarry under certain restrictions.

The Environmental Hearing Board held hearings on 10 separate days, followed by oral argument. A voluminous record of 2202 pages of testimony was transcribed. With even a casual reading of this testimony, it is apparent that all parties were sincerely and diligently seeking a solution to the blasting problem. There was more than ample testimony to have supported a finding in either party's favor. The Environmental Hearing Board, supported by a very carefully prepared adjudication by its chairman, sustained the denial of the permanent permit but ordered that one or more interim permits be granted appellant so that a satisfactory method of blasting could be achieved.

In its appeal to this Court, appellant raises two questions:

"I. When the Department of Environmental Resources refuses to license a lawful quarry operation, alleging nuisance, does the Department meet its burden of proof with oral and visual testimony only?

"II. Has the Environmental Hearing Board applied the proper standards in its determination that Appellant's blasting operation constitutes a common law industrial nuisance?"

The first question is a very narrow one. Appellant offered the testimony of acknowledged blasting experts of national reputation, together with seismographic re-

ports. These reports showed that the vibrations, "peak particle velocity," were substantially below the 2.0 level determined to be the maximum allowable as recommended by the U. S. Bureau of Mines. The appellee offered one expert who made at least two trips to the site and examined the alleged blasting damages to property in the vicinity. His "visual" examination led him to conclude, taking all factors into consideration, that the blasting was causing the alleged damage.

Appellant relies on *Department of Environmental Resources v. Leon E. Kocher Coal Company*, 9 Pa. Commonwealth Ct. 110, 305 A.2d 784 (1973); *U. S. Steel Corp. v. Department of Environmental Resources*, 7 Pa. Commonwealth Ct. 429, 300 A.2d 508 (1973); and *Bortz Coal Co. v. Department of Environmental Resources*, 7 Pa. Commonwealth Ct. 362, 299 A.2d 670 (1973). This reliance is totally misplaced. In *Bortz*, our leading case in this area, the issue was whether specific measurements were being met. To analogize that case to the instant case, the expert in the instant case would have to have "visually" or "by feeling" disputed the measurement of the seismograph. Obviously, this is not the case. In *Kocher*, the Department's expert relied on visual tests while at the same time stating that, in his opinion, a stability analysis test was necessary but was not made. Finally *U. S. Steel Corp.* really is in support of the appellee's position, not appellant's. There, the Court approved a decision based on both visual and scientific tests.

The second question goes to the heart of the case. Does this record support the Board's finding that the blasting constituted a public nuisance? In our opinion, clearly it does. A study of the blasting cases in which the blasting was declared to be a nuisance indicates that where there is credible evidence that the blasting is causing damage to the property of others, as there is here, and if it is so found as a fact, as it has been here, a public nuisance does exist. *See Beecher v. Dull*, 294 Pa.

17, 143 A. 498 (1928); *House of Refuge v. J. T. Dyer Co.,* 43 Pa. Superior Ct. 320 (1910). *See also Federoff v. Harrison Construction Co.,* 362 Pa. 181, 66 A.2d 817 (1949).

Accordingly, we enter the following

ORDER

Now, February 10, 1976, the order of the Environmental Hearing Board, dated August 20, 1974, affirming the denial of a permanent permit and ordering the issuance of one or more interim permits, is affirmed.